USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/9/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
CHARLES C. GREEN,

                                  Plaintiff,

-against-

CHAD D. HARBACH,

                                 Defendants.
------------------------------------------------------------- X

**ORDER AND OPINION GRANTING MOTION TO DISMISS**

17 Civ. 6984

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Plaintiff Charles C. Green, the author of *Bucky's 9th* (*Bucky's*), filed this action for copyright infringement, *see* 17 U.S.C. § 101 *et seq.*, on September 14, 2017 against Defendant Chad D. Harbach, the author of *The Art of Fielding* (*TAOF*), alleging that Harbach misappropriated Green's creative efforts in authoring a work "substantially similar" to *Bucky's*.[1] The Complaint, which incorporates by reference the two works,[2] alleges that *TOAF* and *Bucky's* share a common premise, setting, plot and structure, and the Complaint includes examples from the works allegedly indicating such shared content. Defendant now moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), *see* Dkt. No. 11, on the basis of a single dispositive issue, arguing that the two works are not "substantially similar" and therefore do not support a claim for copyright infringement.[3] Having reviewed the two works and the parties' briefing, I find that the works are not substantially similar, and grant Defendant's motion.

---

[1] The Complaint contains two counts, one for "Damages for Copyright Infringement" (Count I), and one for "Injunctive Relief" (Count II).
[2] A complete copy of Bucky's is attached as Exhibit B to the Declaration of Elizabeth A. McNamara. *See* Dkt. No. 13. A complete copy of the *TOAF* was provided to the Court as Exhibit A. *Id*
[3] Defendant does not contest that "access" has been adequately alleged in the Complaint.

1

## LEGAL STANDARD

To establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). In the absence of direct evidence, copying is proven by showing "(a) that the defendant had access to the copyrighted work and (b) the substantial similarity of protectible material in the two works." *Kregos v. Associated Press*, 3 F.3d 656, 662 (2d Cir. 1993).

In determining whether two works are substantially similar, the "underlying issue" is "whether a lay observer would consider the works as a whole substantially similar to one another." *Williams v. Crichton*, 84 F.3d 581, 590 (2d Cir. 1996). The question is whether an "ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2d Cir. 2010) (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir.2001). A court must "examine the similarities in such aspects as the total concept and feel, theme, characters, plot, sequence, pace, and setting of the" works in question. *Williams*, 84 F.3d at 588. "[T]he determination of the extent of similarity that will constitute a substantial, and hence infringing, similarity presents one of the most difficult questions in copyright law, and one that is the least susceptible of helpful generalizations." *Gaito Architecture*, 602 F.3d at 63 (quoting 4–13 Nimmer on Copyright § 13.03 (2009)).

Furthermore, it is "a principle fundamental to copyright law" that "a copyright does not protect an idea, but only the expression of an idea." *Kregos*, 3 F.3d at 663. "Similarly, *scenes a faire*, sequences of events that necessarily result from the choice of a setting or situation, do not enjoy copyright protection." *Williams*, 84 F.3d at 587 (internal quotation marks omitted)

2

(*Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986)). Therefore, when a court "determine[s] that a work contains both protectible and unprotectible elements, [it] must take care to inquire only whether the *protectible elements, standing alone,* are substantially similar." *Williams*, 84 F.3d at 588 (internal quotation marks omitted) (citing *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir.1995)).

A court must also "recognize that *dissimilarity* between some aspects of the works will not automatically relieve the infringer of liability, 'for no copier may defend the act of plagiarism by pointing out how much of the copy he has not pirated.'" *Id.* (quoting *Rogers v. Koons*, 960 F.2d 301, 308 (2d Cir. 1992). "It is only where the points of dissimilarity exceed those that are similar and those similar are—when compared to the original work—of small import quantitatively or qualitatively that a finding of no infringement is appropriate." *Rogers*, 960 F.2d at 308.

Finally, "[t]he question of substantial similarity is by no means exclusively reserved for resolution by a jury" and the Second Circuit has "repeatedly recognized that, in certain circumstances, it is entirely appropriate for a district court to resolve that question as a matter of law, either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." *Gaito Architecture*, 602 F.3d at 63 (internal quotation marks omitted) (quoting *Warner Bros. Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 240 (2d Cir. 1983)). "Thus, where, as here, the works in question are attached to a plaintiff's complaint, it is entirely appropriate for the district court to consider the similarity between those works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation." *Id.* at 64. On such a motion to dismiss, *see* Fed. R. Civ. P. 12(b)(6), a

3

Court may consider the documents or works incorporated in the complaint by reference, *see McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007), and these works supersede contrary descriptions of them found in the compliant.

## THE TWO WORKS

### *Bucky's 9th*

*Bucky's 9th* tells the story of Kenesaw "Bucky" Bucks a former star pitcher at Princeton University who dropped out of Princeton and fell into a degenerative life upon the unexpected suicidal death of his father, Orville "Thunder" Bucks, a former NFL quarterback. The novel begins with Bucky, after three years of alcoholism, meeting Willie Chance, a former teammate and friend of Thunder, who encourages Bucky to matriculate and play baseball for the Hill College for the Deaf, a small college located in the suburbs of Philadelphia. Willie had spent five years in prison in connection with a game-fixing scandal, and now coaches Hill's baseball team, the Oaks.

The college anticipates cutting the team's funding and, at the behest of science professor Robert Goodnight (the nemesis in *Bucky's*), building a science center on the site of the baseball field. To keep the team, president Elaine Miller tells Willie that he must turn around the Oaks and its dismal record. Fearing that funding for his job will soon cease, Willie seeks Bucky's talent.

Bucky, in turn, haunted by the legacy and death of his father, the details of which Bucky knows little about, agrees to play for Willie and Hill College, seeing it as an opportunity to learn from Willie about the death of his father. Thunder committed suicide on the day Willie was released from prison. To play for Hill—a college for deaf persons—Willie creates a fraudulent student identity for Bucky, Harold "Bucky" LaMar, and Bucky agrees to feign deafness and join the team.

4

At Hill College, Bucky rooms with the initially hostile pitcher, Al Pagano, and finds himself isolated from the other deaf students and his teammates. Bucky finds companionship and begins a relationship with the school's 24-year-old Assistant Dean of Students, Julie Ross. The relationship is marred by Bucky's constant need to conceal his true identity as a hearing person in a college for the deaf.

With Bucky on the team, the Oaks began to win and ultimately make it to the championship, with the players gaining respect for Bucky and confidence in themselves. Bucky's teammates discover that he is not deaf, and Bucky has a strained relationship with some of the other players, especially the shortstop Tischler. The strife is ultimately settled when Bucky and Tischler together vandalize the field of their arch-rivals, Alice Deal.

Bucky also speaks to Willie about his father's death, who reveals that Thunder caused Willie's imprisonment by leaking to a journalist the latter's role in the game-fixing. Willie reveals that Bucky can make it up to him by helping Hill College win the championship.

*Bucky's* drama heightens when Professor Goodnight becomes aware of Bucky's false identity and threatens to expose him before the Oaks are expected to play Alice Deal in the championship. Julie also learns of Bucky's secret. Instead of attending the championship game, Bucky decides to reconcile with Julie and speak with her in her apartment. Julie feels betrayed but encourages Bucky to leave and do what is important to him—win the championship.

Bucky arrives at the ninth inning of the championship game, with the Oaks down by one run, a man on first, and two outs. Bucky takes the plate, pinch hits, and racks up two strikes. The pitcher and catcher call a conference, disclosing that Bucky had vandalized Alice Deal's field. The next pitch hits Bucky in the head and Bucky gets on base. Bucky's walk is insufficient to win the game and the Oaks lose on the next play.

Despite their loss, the Oak's celebrate their achievements and a wealthy alumnus, inspired by the game, saves the team with a large donation. While Professor Goodnight speaks to President Miller about Bucky's false identity, Miller reacts calmly and relates that there will be no consequences for either Willie or Bucky. *Bucky's* ends with Bucky and Julie mending their relationship and starting a family together.

### *The Art of Fielding*

*The Art of Fielding* tells the story of Henry Skrimshander and his joining the baseball team of Westish College, a liberal arts college located on the western shore of Lake Michigan. *TAOF* is about Henry's development in Westish from relative obscurity into a nationally recognized and recruited shortstop.

*TAOF* begins with Mike Schwartz, a rising sophomore at Westish, who notices Henry playing baseball during Mike's summer vacation. Impressed by Henry's talent, Mike recruits Henry to play baseball at Westish and promises to be his guide and mentor. Henry, who at the time had no ambitions to attend college, agrees.

At Westish, Henry shares a room with the amiable Owen Dunne, a gay black student who is also a member of Westish's baseball team, the Harpooners. Mike trains Henry incessantly, and over the course of two years, helps Henry become the Harpooner's star shortstop player, bringing the historically bad team consistent victories.

Things take a turn for the worse, however, when Henry throws an errant ball into the dugout and badly injures Owen. Feeling guilty and losing his confidence, Henry falls into despair and becomes unable to successfully play shortstop. Mike, in turn, questions his own future after receiving consistent rejections on his applications to law school, becoming dependent on pain killers intended to treat knee pain.

In the meantime, Guert Affenlight, the popular about-60-year-old bachelor and president of Westish, finds romantic interest in Owen, and the two soon begin a homosexual relationship, meeting daily, on and off campus. Further, Guert's daughter, Pella, has returned to Westish, deciding to separate from her husband (David), and to begin working and taking classes at Westish College. Mike and Pella begin a romantic relationship.

Even though Henry slowly, and then ultimately and entirely, loses his ability to play baseball, the Harpooners continue to play well and eventually make it to the championship to be played in South Carolina. Henry, who had quit the team, is not expecting to play. Henry also engages romantically with Pella, creating a rift in Henry and Mike's relationship. Professional baseball recruiters continue to pester Henry, further deepening his anxiety surrounding his baseball playing and talent.

Soon before the championship game, Guert has a reckoning of his own when the college administration learns of his affair with Owen and presents him with an ultimatum to either resign or be exposed. Guert, who had bought a plane ticket to attend the championship game, meets with Henry, gives him the ticket, and encourages him to play.

Henry arrives at the championship game, and while initially hiding, is noticed by Owen. Henry takes the position as the first base coach, but Mike and Owen learn that Guert has died of a heart attack (suspected as a suicide). Owen, crippled by this deadly fact, recoils and is unable to play. Bottom of the ninth, two outs, down by one and a man on first, Henry then pinch hits for Owen. Henry takes two strikes on identical sliders, and then encourages the pitcher to throw a high and tight pitch by standing back. The pitcher delivers a fastball and Henry leans into the ball, knowing he currently lacked the talent to hit it. Henry gets hit by the ball, takes a walk, and scores the game winning run.

Back on campus, Pella, Mike, Henry, and Owen exhume Guert's body and move it to Lake Michigan. Pella enrolls in fall semester classes, and Mike takes an assistant coaching job at Westish. Henry rejects an offer to play professionally and decides to play for Westish during his senior year.

## THE COMPLAINT

The Complaint alleges that between 1994 and 2008 Green created multiple iterations of *Bucky's* and its precursors and submitted said works to various literary agents for potential publication. Complaint at ¶¶ 11–13.[4] *TAOF*, which Harbach began working on in 2000, was published in 2011.

According to the Complaint, "there are extensive—and substantial—similarities between *Bucky's* and *TAOF* in terms of their premise and setting, plot/structure, content, idiosyncratic authorial choice, and the near-exact timing of events (including stand-alone details, scene, sequencing, and recurrent themes)." ¶ 22. Attached to the Complaint is an Appendix, further containing three addenda, highlighting examples of the alleged similarities.

The Complaint highlights various categories of similarities between the two works.[5] First, regarding the "premise and setting," the Complaint alleges that the works "share certain conventions that are common to sports narratives, such as the tale of a perennial and disadvantaged underdog which defeats its long-superior rivals and is led by a talented, but troubled, prodigy." ¶ 23. The two works also allegedly share the same "unconventional premise and setting: a small, obscure and financially struggling (yet academically proud) liberal arts

---

[4] In evaluating the sufficiency of a complaint under Rule 12(b)(6), the Court must construe the complaint in a light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in the nonmoving party's favor. *Patane v. Clark*, 503 F.3d 106, 111 (2d Cir. 2007). To survive a Rule 12(b)(6) motion, the complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[5] Defendant's and Plaintiff's papers on this motion to dismiss further describe the alleged similarities between the two works. *See* Dkt. No. 17, Appendices 1–4. Because the two works are incorporated by reference in the Complaint, the works themselves form the basis of the Court's review for substantial similarity.

school whose athletic teams compete in the lowest collegiate ranks, Division III, and thus do not have the benefit of athletic scholarships." *Id.*

Second, regarding the "plot and structure," the Complaint alleges four similarities between the plots of the two works, which the Complaint refers to as "core narratives" and designated as: (1) the Baseball Prodigy-Comes-of-Age-Plot; (2) the Recruiter-Mentor Plot; (3) the Illicit-Romance Plot; and (4) the Intergenerational Plot." ¶ 25.

Third, the Complaint alleges that the two works have "startlingly" shared content evident in the final scenes of the works when the "prodigy" returns from his absence and joins the game in the 9th inning as a pinch-hitter, only to be beaned by the opposing pitcher. The Complaint refers to this as the "Baseball Climax and Denouement."

## DISCUSSION

Having reviewed the two relevant works in their entirety, I find that they are not substantially similar, and do not therefore support a claim for copyright infringement. When read in context, the portions or features of *TOAF* that are alleged to be similar to *Bucky's* are either abstract ideas, *scenes a faire*, or trivial details insignificant to the either of the two works. True, both works are about a struggling Division III baseball college team, and both works track the baseball team's changed fortunes after the arrival of a new player. But that is the extent of the similarities. The two works, for example, are entirely different as to why and how the new player, Henry and Bucky respectively, arrived at the team and as to the nature of the new player's professional and personal development. Bucky, for one, was previously a college baseball star and returned to college baseball, after a fall into degenerative behavior, upon the prompting of the middle-aged Coach Willie Chance who sought out Bucky's talent. Bucky's return to baseball was part of his quest to understand the strange circumstances behind the death of his father, a professional football player and friend of Chance, and much of *Bucky's* narrative

surrounds Bucky's odd attempt to feign deafness in attending a college for deaf persons. Henry, by contrast, a skinny and innocent-like boy, turned to college baseball after 19-year old Mike Schwartz, first a stranger and then a friend to Henry, remarkably noticed Henry's nascent but underdeveloped talent one summer day during Mike's freshman year. Enrolling in Westish College at Mike's prompting, Henry is thrown into college campus life, an environment different from Henry's (conservative) hometown, where he subsequently suffers from a crisis in confidence that ultimately affects his baseball playing and personal relationships. *TOAF*, infused with a host of characters, like Owen, Pella, and Affenlight, is as much a novel about Henry's development as it is about the various campus-life characters who give context to Henry's newfound life. It can hardly be said that the two works, taken as a whole, tell similar stories.

Still, Plaintiff drills down into particular scenes and points to portions or aspects of *TOAF* that he argues are substantially similar to *Bucky's*. Plaintiff's arguments, which he analyzes in terms of "the total concept and feel, theme, characters, plot, sequence, pace, and setting" of the works, *Williams*, 84 F.3d at 588, are unpersuasive.

First, Plaintiff argues that the two works share a common "plot, sequence and pace," pointing to four common plot features alleged to be similar (*i.e.*, (1) Baseball Prodigy-Comes-of-Age Plot; (2) Recruiter-Mentor Plot; (3) Illicit Romance Plot; and (4) Intergenerational Plot). These supposed plot structures, however, fail to accurately characterize either of the works, and represent rather a strained attempt to impose structure where none is salient, evident, or important to the works on the whole. For example, Bucky and Henry do not "come of age" in any similar way. Bucky's development is in learning about his father's death and in the saga surrounding his feigned deafness; Henry's development (and regression) is in navigating college

10

campus social life and in coming to terms with the notoriety, fame, and life incident to his blossoming baseball talent.

The other supposed plot features fare no better. Mike and Willie, the respective "recruiters" of Henry and Bucky, share little in common in terms of age, position on the team, or relationship with Henry or Bucky, and, more importantly, play different roles in the overall scheme of the book: Willie is a tragic figure, reckoning with a scarred past; Mike, while grieved by a painful childhood, is an upbeat figured reckoning with his future after graduating from Westish. Furthermore, the alleged similarity between the "illicit relationships" of Bucky and Julie, and Owen and Guert, ends with the (unremarkable) fact that they both involve administrator/student relationships. Every other aspect of these relationships are different. In *TAOF* the relationship was homosexual in nature; in *Bucky's* it was not. In *TOAF* there was a large age disparity; in *Bucky's* there was not. And, most importantly, in *TOAF* the relationship involved the main character, Henry; in *Bucky's* it did not. Plaintiff here mixes and matches characters and plot lines, choosing here not to compare Bucky to Henry but to compare Bucky to Owen. The illicit relationship between Owen and Affenlight, both of whom are central characters thoroughly developed throughout the *TOAF*, relates to an plot line independent from Henry's, which, when understood in context, functions in an entirely different way than the barely-"illicit" relationship between Bucky and 24-year-old Julie.

In much the same way, many of Plaintiff's arguments mix and match characters and plot lines in his attempt to find similarity in the two works' respective plots. It is true that both works have what Plaintiff vaguely refers to as an "intergenerational plot," both having some measure of estrangement between a father and his child. Here again, however, Plaintiff chooses to compare Bucky not to Henry but to Pella, another independent and central character whom is developed

throughout *TOAF* as a wife of David, a lover of both Mike and Henry, and a daughter to Guert. How Pella navigates between her father, her failing relationship with David, and her subsequent burgeoning life at Westish College represents an important plot feature of the *TOAF*. The Pella/Guert relationship is barely similar to Bucky's relationship with his father and his attempt to understand the circumstances behind his father's death.[6]

While the entirety of the two works are quite different, Plaintiff harps on one scene, his self-proclaimed strongest argument, pointing to what he alleges to be the "climax" of both works and which he alleges follows in both works in a "lockstep sequence of events." Opposition at 21.[7] According to Plaintiff, both novels climax when, with two outs and two strikes, the "prodigy" pinch hits and gets beaned by the third pitch.

However, despite whatever facial similarities Plaintiff may point to, there is little in common between how the two beaning scenes function in each novel's respective plot. Any similarities are either not copyrightable abstract ideas, or, when understood in context, not actually similar. For one, Henry and Bucky were absent from their respective games for entirely different reasons: Henry, who for months despaired from playing baseball, returned for the championship game at Guert's insistence; Bucky, on the other hand, missed only one game, suffering no crisis in confidence, being busy with reconciling with Julie. Bucky arrives in the ninth inning as the team's best player, and is intentionally beaned by the opposing team. Henry arrives in the ninth inning as the team's lesser substitute, who is ultimately willing to sacrifice himself by intentionally getting beaned. That the Oaks ultimately lose the game, whereas the

---

[6] The supposed common "themes" identified by Plaintiff (David and Goliath; the Little Engine That Could; Christ-like Resurrection and Self-Sacrifice) relate to unprotectible ideas. To the extent the themes relate to expression of ideas, rather than ideas themselves, the two works are not substantially similar for the reasons identified throughout this opinion.

[7] According to Plaintiff: "It was Harbach's lifting of the scenes in the third act—which are the very essence of *Bucky's*—that clearly transformed ... *TOAF* into a best seller." Opposition at 21.

Harpooners win, further highlights the significant difference in meaning and importance of the beaning scene in each respective work. In short, when read in context, none of Plaintiff's allegations of substantial similarity hold up, the beaning scene included.[8]

## CONCLUSION

For the reasons state above, Defendant's motion to dismiss is granted. The Clerk shall terminate the motion (Dkt. No. 11), enter judgment for Defendant, dismissing the Complaint, and mark the case closed. Oral argument, scheduled for July 19, 2018, is cancelled.

SO ORDERED.

Dated: July 9, 2018
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

---

[8] Plaintiff also provides the court with various appendixes containing comparison charts, listing allegedly similar parts of the two works, some (but not all) of which were highlighted in Plaintiff's main briefing. For example, Plaintiff highlights that Bucky is called a "savior" and Henry a "messiah"; that both Mike and Willie consider(ed) going to law school; and that both Julie and Pella had blue panties. See Appendix to Complaint. In this opinion, I discuss the alleged similarities most supportive of Plaintiff's claims, as the vast majority of the remaining supposed similarities are "random similarities scattered throughout the works," *Williams*, 84 F.3d at 581 (quoting *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir.1984)), adding little support to Plaintiff's claim of substantial similarity.