UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

CHARLES C. GREEN,

                Plaintiff,

       - against -

CHAD D. HARBACH,

               Defendant.

------------------------------------------------------------ x

Civil Action No.: 17 Civ. 6984 (AKH)

 

 

# MEMORANDUM OF LAW IN SUPPORT OF
## RENEWED MOTION BY DEFENDANT CHAD HARBACH
### FOR AN AWARD OF ATTORNEYS' FEES

Elizabeth McNamara
Adam Lazier

DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas
21st Floor
New York, New York 10020
Telephone:  (212) 489-8230
Facsimile:  (212) 489-8340

*Attorneys for Defendant*
*Chad D. Harbach*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................. 2

ARGUMENT ......................................................................................................... 6

     I.     HARBACH SHOULD BE AWARDED HIS REASONABLE
           ATTORNEYS' FEES ................................................................................ 6

           A.     Plaintiff's position in this case was objectively unreasonable ................... 8

           B.     Plaintiff's improper motivation supports an award of attorneys' fees ...... 13

           C.     Awarding Harbach his fees would support the considerations of
                  compensation and deterrence .................................................................. 15

     II.    HARBACH'S ATTORNEYS' FEES ARE REASONABLE............................... 17

           A.     The rates charged are reasonable given the experience and
                  qualifications of counsel ......................................................................... 18

           B.     The number of hours worked was reasonable........................................... 20

CONCLUSION..................................................................................................... 21

4821-8345-7161v.2 3910089-000050

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*16 Casa Duse, LLC v. Merkin*,
  791 F.3d 247 (2d Cir. 2015)........................................................................7

*Acker v. King*,
  46 F. Supp. 3d 168 (D. Conn. 2014) ........................................................19

*Adsani v. Miller*,
  No. 94 Civ. 9131 (DLC), 1996 WL 531858 (S.D.N.Y. Sept. 19, 1996) .......................9, 10, 21

*Agence France Press v. Morel*,
  No. 10-cv-2730 (AJN), 2015 WL 13021413 (S.D.N.Y. Mar. 23, 2015),
  *aff'd*, 645 F. App'x 86 (2d Cir. 2016).....................................................9

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,
  493 F.3d 110 (2d Cir. 2007), *amended on other grounds*, 522 F.3d 182
  (2d Cir. 2008)..............................................................................17

*Arnstein v. Porter*,
  154 F.2d 464, 468 (2d Cir. 1946).............................................................13

*Baker v. Urban Outfitters, Inc.*,
  431 F. Supp. 2d 351 (S.D.N.Y. 2006), *aff'd*, 249 F. App'x 845 (2d Cir. 2007).....................16

*Brown v. Perdue*,
  No. 04 Civ. 7417(GBD), 2005 WL 1863673 (S.D.N.Y. Aug. 4, 2005),
  *aff'd*, 177 F. App'x 121 (2d Cir. 2006)..................................................19

*Brown v. Time Warner, Inc.*,
  287 F. Supp. 3d 380 (S.D.N.Y. 2017).......................................................19

*Cline v. Reetz-Laiolo*,
  3 F. Supp. 3d 1000 (N.D. Cal. 2018) .......................................................18

*Dunn v. Brown*,
  No. 10 Civ. 11383 FDS, 2011 WL 4527449 (D. Mass. Sept. 26, 2011) ................................19

*Earth Flag Ltd. v. Alamo Flag Co.*,
  154 F. Supp. 2d 663 (S.D.N.Y. 2001)...............................................10, 16, 17, 21

*Effie Film, LLC v. Murphy*,
  629 F. App'x 16 (2d Cir. 2015) ............................................................8

ii

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994).................................................................................. *passim*

*Gaste v. Kaiserman*,
863 F.2d 1061 (2d Cir. 1988)..................................................................14

*Harrell v. Van der Plas*,
No. 08 Civ. 8252(GEL), 2009 WL 3756327 (S.D.N.Y. Nov. 9, 2009).......................7, 12, 17

*Kirtsaeng v. John Wiley & Sons, Inc.*,
136 S. Ct. 1979 (2016)............................................................................... *passim*

*Littel v. Twentieth Century-Fox Film Corp.*,
No. 89 Civ 8526 (DLC), 1996 WL 18819 (S.D.N.Y. Jan. 18, 1996),
*aff'd sub nom. DeStefano v. Twentieth Century Fox Film Corp.*,
100 F.3d 943 (2d Cir. 1996)......................................................................9

*Louis Vuitton Malletier S.A. v. My Other Bag, Inc.*,
--- F. App'x ---, 2019 WL 1223089 (2d Cir. Mar. 15, 2019) ..................................9

*Mahan v. Roc Nation, LLC*,
634 F. App'x 329 (2d Cir. 2016) .............................................................16

*Mallery v. NBC Universal, Inc.*,
No. 07 Civ. 2250(DLC), 2008 WL 719218 (S.D.N.Y. Mar. 18, 2008),
*aff'd*, 331 F. App'x 821 (2d Cir. 2009)......................................................10

*Marquardt v. King*,
No. 1:10-CV-3946-JEC, 2011 WL 5042054 (N.D. Ga. Aug. 10, 2011) ...............19

*Matthew Bender & Co. v. West Publ'g Co.*,
240 F.3d 116 (2d Cir. 2001).................................................................7, 13

*Mostly Memories, Inc. v. For Your Ease Only, Inc.*,
594 F. Supp. 2d 931 (N.D. Ill. 2009) .........................................................21

*Muller v. Twentieth Century-Fox Film Corp.*,
No. 08 Civ. 2550(DC), 2011 WL 3678712 (S.D.N.Y. Aug. 22, 2011) .............11, 21

*Nobile v. Watts*,
289 F. Supp. 3d 527 (S.D.N.Y. 2017),
*aff'd*, 747 F. App'x 879 (2d Cir. 2018).................................................... *passim*

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
602 F.3d 57 (2d Cir. 2010).................................................................10, 13

*Porto v. Guirgis*,
659 F. Supp. 2d 597 (S.D.N.Y. 2009)....................................................8, 10, 16

iii

*Schleifer v. Berns*,
  No. 17 Civ. 1649 (BMC), 2017 WL 3084406 (E.D.N.Y. July 19, 2017).................................9

*Scott v. Meyer*,
  No. CV 09-6076 ODW, 2010 WL 2569286 (C.D. Cal. June 21, 2010)...........................19, 21

*Starobin v. King*,
  137 F. Supp. 2d 93 (N.D.N.Y. 2001) ....................................................................................15

*TCA Television Corp. v. McCollum*,
  No. 15 Civ. 4325, 2017 WL 2418751 (S.D.N.Y. June 5, 2017),
  *R&R adopted*, 2018 WL 2932724 (S.D.N.Y. June 12, 2018)....................................................6

*Torah Soft Ltd. v. Drosnin*,
  No. 00 cv 5650(JCF), 2001 WL 1506013 (S.D.N.Y. Nov. 27, 2001) ..........................9, 10, 13

*Twentieth Century Music Corp. v. Aiken*,
  422 U.S. 151 (1975)............................................................................................................15

*Williams v. Crichton*,
  84 F.3d 581 (2d Cir. 1996)...................................................................................................12

*Yurman Designs, Inc. v. PAJ, Inc.*,
  125 F. Supp. 2d 54 (S.D.N.Y. 2000), *aff'd*, 29 F. App'x 46 (2d Cir. 2002)...........................19

**Federal Statutes**

17 U.S.C. § 505....................................................................................................................1, 6, 15

**Rules**

Fed. R. Civ. P. 54(d) ....................................................................................................................1, 6

Defendant Chad Harbach ("Harbach") respectfully submits the following memorandum of law in support of his renewed motion pursuant to 17 U.S.C. § 505 and Fed. R. Civ. P. 54(d) for an award of attorneys' fees, as the prevailing party in the above-captioned action.

## PRELIMINARY STATEMENT

The Copyright Act authorizes this Court to award full costs, including reasonable attorneys' fees, to the "prevailing party" in a copyright action. 17 U.S.C. § 505. Following well-established case law, on July 9, 2018, the Court issued an Opinion and Order, Dkt. 26 (the "District Court Order"), granting Harbach's motion to dismiss the Complaint in its entirety with prejudice, holding that the works at issue in this case – Harbach's novel *The Art of Fielding* and Plaintiff's unpublished manuscript *Bucky's 9th* – are not substantially similar. *Id*. at 9. As the prevailing party, Harbach then moved for his attorneys' fees, but because Plaintiffs had already appealed the Court denied that motion with leave to renew it after the Second Circuit's disposition of the case. Dkt. 44.

The Second Circuit summarily affirmed this decision in February 2019. In a decision it issued less than a week after hearing oral argument, the Court disposed of Plaintiff's substantial similarity argument in a single paragraph. Dkt. 48 (the "Second Circuit Order"). Harbach therefore now renews his fees motion.

From shortly after this action was commenced, Plaintiff was on express notice that his claims had no merit and could not withstand a motion to dismiss – yet he nonetheless pursued his meritless claims all the way to the Second Circuit. Plaintiff's actions, his conduct of this litigation, and his public statements about the case all suggest that he sued here without a good-faith belief that Harbach infringed his copyright.

A fee award is particularly justified here, because (1) Harbach achieved complete success in the action in an upfront motion to dismiss, (2) Plaintiff's copyright infringement claim and his

4821-8345-7161v.2 3910089-000050

conduct of this litigation were both objectively unreasonable, (3) Plaintiff's decision to prosecute this lawsuit despite knowledge of its lack of merit – and his public statements about the case – suggest an improper motivation, and (4) an award of Harbach's full attorneys' fees will advance the purposes of the Copyright Act as it will deter Plaintiff and others from pursuing such groundless litigation in the future.  *See Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016); *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994).  Harbach respectfully submits that the Court should award him his attorneys' fees in full.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    This Case

Defendant Chad Harbach published *The Art of Fielding*, his first novel, in 2011, and the novel quickly became a critical and commercial success.  On September 14, 2017 – about six years after *The Art of Fielding* was published – Plaintiff Charles Green filed this lawsuit, claiming that "a desperate and economically strapped" Harbach copied *The Art of Fielding* from *Bucky's 9th*, an unpublished manuscript he wrote in the 1990s and early 2000s.  Dkt. 1 (Complaint) ¶¶ 2, 11.

Harbach moved to dismiss the case on November 10, 2017, arguing that *The Art of Fielding* was not substantially similar to *Bucky's 9th*.  Dkt. 11.  On February 9, 2018, after that motion was fully briefed, the Court held a scheduling conference to assess "whether the briefs are sufficient for final judgment, without a trial or further proceedings."  Dkt. 20.  At that conference, the Court expressed its view that there was no substantial similarity between the works in question.  Instead of discontinuing this case after the conference, however, Plaintiff moved to amend his Complaint to include, among other things, expert evidence purporting to show mathematically the rarity of certain events depicted in both works.  Dkt. 22.  The Court denied this motion just four days later, without even waiting for Harbach's opposition, holding

2

that "[t]he proposed amendments merely add evidentiary material, and do not amend or supplement material allegations," and that "[t]he complaint already is unnecessarily prolix." Dkt. 24.

Following denial of this motion, Plaintiff's counsel wrote to counsel for Harbach, offering to discontinue the lawsuit if Harbach provided "drafts of *TAOF* that (a) contain the similarities noted in the Complaint, particularly the similarities in the run to the championship, third act, the championship game and denouement; and (b) predate (or are concurrent with) Mr. Green's work," including "time-stamped documents that pass muster with forensic investigators and/or time-stamped emails showing when Mr. Harbach's drafts were created." Declaration of Elizabeth A. McNamara ("McNamara Decl.") Ex. C.  Harbach's counsel declined to provide these drafts, noting that Plaintiff already had access to Harbach's MFA thesis, which contains many of the supposed similarities, and that "even if an exchange of Mr. Harbach's drafts demonstrated that the 'at bat' scene first appeared in his work after you claim he might have had access to Mr. Green's work, that would not prove access and it most certainly would not prove substantial similarity."  *Id*. Ex. D.

Harbach's counsel also urged Green's counsel to dismiss the case.  She warned him that Harbach would be entitled to seek attorneys' fees if the case were dismissed.  *Id.*  Green's counsel responded that "we have of course factored that into our analysis," *id.* Ex. E, and declined to voluntarily discontinue the case.  *Id.*

## B.      This Court Dismisses Plaintiff's Claim

This Court granted Harbach's motion to dismiss on July 9, 2018 and dismissed the Complaint in its entirety with prejudice.  In doing so, it held that the works are not substantially similar as a matter of law.  District Court Order at 9.  "When read in context," it wrote, "the portions or features of *TAOF* that are alleged to be similar to *Bucky's* are either abstract ideas,

*scenes a faire*, or trivial details insignificant to either of the two works." *Id.* While both works are about struggling Division III college baseball teams whose fortunes change after the arrival of a new player, "that is the extent of the similarities." *Id.*

The Court found that the four purported shared plot structures cited in Plaintiff's complaint actually "fail to accurately characterize either of the works, and represent rather a strained attempt to impose structure where none is salient, evident, or important to the works on the whole." *Id.* at 10. It cited numerous differences between the books' characters and plots, observing that "many of Plaintiff's arguments mix and match characters and plot lines in his attempt to find similarity in the two works' respective plots." *Id.* at 11. The "vast majority" of the other similarities Plaintiff cited in voluminous lists and appendices attached to his materials, the Court noted, amount to nothing more than "'random similarities scattered throughout the works,' adding little support to Plaintiff's claim of substantial similarity." *Id.* at 13 n.5 (citation omitted).

Finally, the Court was not persuaded by Plaintiff's allegation that similarities in the books' climactic final games gave him a viable claim. Citing pervasive differences between how the games were portrayed, the Court held that "there is little in common between how the two beaning scenes function in each novel's respective plot. Any similarities are either not copyrightable abstract ideas, or, when understood in context, not actually similar." *Id.* at 12. The Court entered final judgment dismissing the action with prejudice on July 11. Dkt. 27. Plaintiff filed a Notice of Appeal on July 16. Dkt. 28.

Harbach then moved for attorneys' fees on August 8, 2018. Dkt. 34. The next day, Plaintiff responded with his own motion asking the Court to defer consideration of the fees motion until the Second Circuit decided his appeal, or to deny that motion without prejudice.

4

Dkt. 37.  On August 30, the Court denied Harbach's initial fees motion, "with leave to renew after the resolution of the appeal currently pending before the Court of Appeals."  Dkt. 46.

### C.      The Second Circuit affirms this Court's decision

The Second Circuit affirmed this Court's dismissal of the case on February 6, 2019 – less than a week after hearing oral argument.  In a short summary order, the court wrote that "we agree with the District Court's well-reasoned decision and conclude that *The Art of Fielding* is not substantially similar to *Bucky's 9th*."  Second Circuit Order at 3.  Its analysis again emphasized that Plaintiff's case relied on unprotectible elements and mischaracterizations of the works:

> Many of the alleged similarities in the works are unprotectible abstract ideas or scènes à faire that do not enjoy copyright protection. Moreover, many of the alleged similarities are similar only at a high level of abstraction; a closer look reveals that they share little in common. In addition, a review of both books reveals that their "total concept and feel" differ quite substantially.

*Id*.

The Second Circuit also rejected Plaintiff's argument that this Court should have granted him leave to amend in order to attach expert evidence to his complaint, citing "[t]he well-established general rule in this circuit" that expert evidence on the issue of substantial similarity is "irrelevant and not permitted."  *Id*.  This meant that Plaintiff's proposed amendments would have been futile.  *Id*.  The Second Circuit issued its mandate to this Court on February 27, 2019. Dkt. 48.

4821-8345-7161v.2 3910089-000050

Now that the Second Circuit has affirmed this Court's dismissal of Plaintiff's case, Harbach renews his motion for attorneys' fees pursuant to Fed. R. Civ. P. 54(d), 17 U.S.C. § 505, and this Court's August 30, 2018 order, Dkt. 46, giving him leave to do so.[1]

## ARGUMENT

### I.  HARBACH SHOULD BE AWARDED HIS REASONABLE ATTORNEYS' FEES

The Copyright Act grants district courts broad discretion to award attorneys' fees and costs to prevailing parties.  Section 505 provides that:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof.  Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.  The decision to award attorneys' fees to the prevailing party under this statute rests within the sound discretion of the Court.  *See Kirtsaeng*, 136 S. Ct. at 1985; *Fogerty*, 510 U.S. at 533.  This Court has the discretion to award fees incurred not only at the District Court level, but also on appeal.  *TCA Television Corp. v. McCollum*, No. 15 Civ. 4325, 2017 WL 2418751, at *16 (S.D.N.Y. June 5, 2017), *R&R adopted*, 2018 WL 2932724 (S.D.N.Y. June 12, 2018).

Prior to the U.S. Supreme Court's decision in *Fogerty*, prevailing plaintiffs were routinely awarded attorneys' fees but prevailing defendants were required to establish a plaintiff's bad faith.  The *Fogerty* Court erased this distinction, and held that "[p]revailing plaintiffs and prevailing defendants are to be treated alike."  510 U.S. at 534.  The Court emphasized that both prevailing plaintiffs and defendants uphold the purposes of the Copyright

---

[1] As is customary in cases like this, Harbach's legal fees have been paid by his publisher, Hachette Book Group.  Any legal fees awarded to Harbach in this motion would go to Hachette. McNamara Decl. ¶ 12.

Act, albeit in different ways.  As the Court emphasized, "defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement."  *Id*. at 527.  Thus, the Supreme Court specifically held that "a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright," and should have the same right to recover its attorneys' fees and costs.  *Id*.

In *Fogerty*, the Supreme Court announced a list of nonexclusive factors for district courts to consider in deciding whether to award attorneys' fees to prevailing parties in copyright infringement cases.  510 U.S. at 534 n.19.  These factors include "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence."  *Kirtsaeng*, 136 S. Ct. at 1985 (quoting *Fogerty*, 510 U.S. at 534 n.19); *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 264 (2d Cir. 2015) (listing *Fogerty* factors).  To best promote the Copyright Act's goals when considering a fee application, district courts should place substantial, but not controlling, weight on the third factor—the objective reasonableness of the losing party's litigation position.  *Kirtsaeng*, 136 S. Ct. at 1988.  This includes his conduct of the litigation, as well as his position on the merits.  *See, e.g.*, *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 124 (2d Cir. 2001) ("If a party's *conduct* is unreasonable, a district court has the discretion to award fees."); *Harrell v. Van der Plas*, No. 08 Civ. 8252(GEL), 2009 WL 3756327, at *4 (S.D.N.Y. Nov. 9, 2009) (awarding fees against unsuccessful defendants where they not only "force[d] plaintiff to litigate without colorable basis, but … chose to pursue the matter in a particularly vexatious manner that multiplied plaintiff's expenses").

7

In light of the Court's decision dismissing Plaintiff's claims with prejudice, there is no doubt that Harbach is the prevailing party in this lawsuit. Moreover, this case is exactly what the Supreme Court envisioned when it held in *Fogerty* that awarding attorneys' fees to prevailing defendants may be necessary to promote the policies of the Copyright Act. By "fail[ing] to accurately characterize either of the works," District Court Order at 10, and asserting copyright claims predicated on nothing more than unprotected ideas, *scenes à faire*, and stock elements – all indisputably not protected by the Copyright Act – Plaintiff's claims were objectively unreasonable and sought to undermine core principles of copyright. Thus, Harbach's position in this action furthered the policies of the Copyright Act because there is a strong public interest in vigorously defending against meritless copyright claims which seek to extend an author's monopoly far beyond the protections afforded under the Act. The factors outlined in *Fogerty* all point to one result in this case: Harbach should be awarded his attorneys' fees.

### A. Plaintiff's position in this case was objectively unreasonable

As both this Court and the Second Circuit recognized, this was not a close case. A simple review of the two works readily established that Plaintiff's copyright infringement claim was objectively unreasonable. District Court Order at 9; Second Circuit Order at 3. The objective reasonableness or unreasonableness of the losing party's positions is entitled to "substantial weight" on a motion seeking fees. *Kirtsaeng*, 136 S. Ct. at 1989; *Effie Film, LLC v. Murphy*, 629 F. App'x 16, 18 (2d Cir. 2015). A copyright infringement claim is objectively unreasonable where "the claim is clearly without merit or otherwise patently devoid of a legal or factual basis." *Porto v. Guirgis*, 659 F. Supp. 2d 597, 617 (S.D.N.Y. 2009) (citation omitted). Where, as here, the Court grants a motion to dismiss based on lack of substantial similarity between the parties' respective creative works, and the issue is not "a close one," it is appropriate to award attorneys' fees.

8

The objective unreasonableness of Plaintiff's position is evident for a number of reasons. *First*, this case turned on a straightforward legal issue of substantial similarity – which is illustrated by the fact the Second Circuit required less than a week to decide the case after oral argument, and needed only one paragraph to dispose of Plaintiff's substantial similarity claim. Indeed, courts in this Circuit have often recognized that substantial similarity is not a novel or complex legal issue.  *Nobile v. Watts*, 747 F. App'x 879, 882 (2d Cir. 2018) (affirming award of attorneys' fees following dismissal for lack of substantial similarity because "Nobile's claims were objectively unreasonable, and his failure to cite on appeal any meritorious copyright claims remotely resembling his own bolsters that conclusion"); *Schleifer v. Berns*, No. 17 Civ. 1649 (BMC), 2017 WL 3084406, at *6 (E.D.N.Y. July 19, 2017) (awarding fees where there were no protectable similarities because "[n]o reasonable copyright attorney, or even an attorney who had devoted 20 minutes to legal research, would have filed this complaint"); *Torah Soft Ltd. v. Drosnin*, No. 00 cv 5650(JCF), 2001 WL 1506013, at *5 (S.D.N.Y. Nov. 27, 2001) (fees awarded when case turning on issue of substantial similarity did not raise novel or complex issues); *Adsani v. Miller*, No. 94 Civ. 9131 (DLC), 1996 WL 531858, at *16 (S.D.N.Y. Sept. 19, 1996) (same); *Littel v. Twentieth Century-Fox Film Corp.*, No. 89 Civ. 8526 (DLC), 1996 WL 18819, at *3 (S.D.N.Y. Jan. 18, 1996) (same), *aff'd sub nom. DeStefano v. Twentieth Century Fox Film Corp.*, 100 F.3d 943 (2d Cir. 1996).  *Compare Agence France Press v. Morel*, No. 10-cv-2730 (AJN), 2015 WL 13021413, at *2 (S.D.N.Y. Mar. 23, 2015) (fees denied where case presented complex issues of first impression in Second Circuit, involving the novel issue of licensing and exploiting copyrighted works in the age of social media), *aff'd*, 645 F. App'x 86 (2d Cir. 2016); *Louis Vuitton Malletier S.A. v. My Other Bag, Inc.*, --- F. App'x ----, 2019 WL 1223089 (2d Cir. Mar. 15, 2019) (affirming denial of fees after summary judgment based on fair use, because plaintiff's "copyright claim turned on the application of a fact-intensive, multifactor

test" in which "one prong of the inquiry, commerciality, favored [plaintiff]."). Indeed, as this Court recognized, the works themselves are "all that is necessary in order to make such an evaluation." District Court Order at 3 (citing *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010)). That the question of substantial similarity may require the Court to analyze lengthy works does not mean that the analysis is complex: "the sum of many zeroes is still zero." *Torah Soft*, 2001 WL 1506013, at *5.

**Second**, the only similarities between the parties' works here were vastly overstated – or outright misrepresented – by Plaintiff. Plaintiff cherry-picked random, minor similarities in order to cobble together a list of similar elements related to non-copyrightable elements such as ideas and *scenes á faire,* rendering Plaintiff's claims objectively unreasonable. *Nobile*, 747 F. App'x at 881-82 (affirming district court's conclusion that copyright claim was objectively unreasonable where "each of [the supposed] similarities is unprotectible as either an idea, a scène à faire, or an instance of *de minimis* similarity."); *Porto*, 659 F. Supp. 2d at 617 (claim objectively unreasonable where "[a]ll of the similarities alleged by the plaintiff are unprotectible elements of his novel that must necessarily be excluded from a substantial similarity analysis"); *Mallery v. NBC Universal, Inc.*, No. 07 Civ. 2250(DLC), 2008 WL 719218, at *1 (S.D.N.Y. Mar. 18, 2008) (copyright infringement claim objectively unreasonable where "nearly every instance of alleged similarity between [defendant's work] and the plaintiffs' work relates to unprotectable ideas rather than protectable expression"), *aff'd*, 331 F. App'x 821 (2d Cir. 2009); *Torah Soft*, 2001 WL 1506013, at *4 (awarding fees where similarities related to "obvious, garden-variety or routine selections," "commonplace or stock features," ideas and other unprotectible elements); *see also Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 667 (S.D.N.Y. 2001) (awarding fees where similarities between works concerned only non-copyrightable elements); *Adsani*, 1996 WL 531858, at *15-16 (awarding fees where, after

10

analyzing plaintiff's various inaccuracies and "extravagant allegations of substantial similarity," the court concluded that, beyond the most general similarities, the books bore almost no relationship to each other).

Judge Chin's decision in *Muller v. Twentieth Century-Fox Film Corp.*, No. 08 Civ. 2550(DC), 2011 WL 3678712, at *4 (S.D.N.Y. Aug. 22, 2011), is instructive.  There, the plaintiff claimed that the defendant's film *AVP: Alien v. Predator* infringed on his screenplay. The Court awarded attorneys' fees to the defendant on the ground that plaintiff's claims were frivolous and objectively unreasonable because (1) the film and screenplay told two "very different stories," (2) while plaintiff attempted to demonstrate "2000+ similarities" between the works, many of the pairings were "not actually similar," and (3) "to the extent there [were] similarities between the Film and the Screenplay, they [were] unprotectable."  *Id*. at *3.

There is no need to repeat the basis for the motion to dismiss in detail, because this Court and the Second Circuit have already recognized that everything Judge Chin emphasized in *Muller* is also true here.  In dismissing the Complaint, this Court noted that similarities between the works did not extend past the generic idea of writing about "a struggling Division III college baseball team" and its "changed fortunes after the arrival of a new player," District Court Order at 9; that the key plot similarities alleged by Plaintiff "fail to accurately characterize either of the works, and represent rather a strained attempt to impose structure where none is salient, evident, or important to the works as a whole," *id.* at 10, 12; and that any similarities "are either abstract ideas, *scenes a faire*, or trivial details insignificant to either of the two works," none of which are protectable by copyright.  *Id.* at 9.  The Second Circuit agreed, finding that "many of the alleged similarities are similar only at a high level of abstraction; a closer look reveals that they share little in common," and that other purported similarities "are unprotectible abstract ideas or scènes à faire that do not enjoy copyright protection."  Second Circuit Order at 3.  Plaintiff's decision to

11

bring an infringement action in these circumstances – and to continue pressing that claim on appeal – was objectively unreasonable.

*Third*, Plaintiff conducted this litigation in "a particularly vexatious manner that multiplied [Harbach's] expenses." *Harrell*, 2009 WL 3756327, at *4. Plaintiff acknowledged at the outset of his Complaint that "the critical and defining aspects of the two works" came down to two relatively simple points – the respective beaning scenes and what he calls the "dead-quarterback plot." Compl. ¶ 2. But he nonetheless accompanied his Complaint and (50-page) memorandum opposing the motion to dismiss with a total of 45 pages of single-spaced appendices listing purported similarities between the novels. Many of these "similarities" have little or nothing to do with what Plaintiff himself called the novels' "critical and defining aspects" – focusing instead on trivial (and plainly unprotectable) details, like characters who share the last name Cox, a "[c]ollege team named for a tree," the claim that both novels feature female characters wearing blue underwear, and random words and short phrases (like a description of music "drifting" through the air) that crop up in both works. Plaintiff's scattershot approach to this litigation increased the complexity and expense of Harbach's motion to dismiss and response to his appeal, and was flatly inconsistent with clear Second Circuit precedent holding that such lists of similarities are "inherently subjective and unreliable" and "cannot support a finding of substantial similarity." *Williams v. Crichton*, 84 F.3d 581, 590 (2d Cir. 1996) (citation omitted).

Even though Plaintiff's Complaint was already, in the Court's words, "unnecessarily prolix," Plaintiff then doubled down on this wrongheaded approach by bringing a frivolous motion to amend his Complaint to make it *even longer*. It was obvious even at the time that the motion – which sought to add to the Complaint additional allegations of access and a report on the mathematical likelihood of certain events happening in a baseball game – was unnecessary

and improper.[2]  This Court therefore did not even wait for a response from Harbach before denying the motion because "[t]he proposed amendments merely add evidentiary material, and do not amend or supplement material allegations," and such evidence "should be described in briefs or affidavits" rather than added to the Complaint, Dkt. 24, and the Second Circuit had no difficulty affirming that decision for the reason that "any expert testimony regarding the rarity of a certain baseball occurrence would be irrelevant to the substantial similarity analysis" under "well-established" Second Circuit law.  Second Circuit Order at 3.  Harbach, however, incurred the expense of preparing a response to the motion (before this Court denied it *sua sponte*), and of responding to Plaintiff's attempt to resurrect his proposed amendments on appeal.

## B.   Plaintiff's improper motivation supports an award of attorneys' fees

Improper motivation for pursuing a claim is also a valid basis for awarding attorneys' fees.  *Matthew Bender*, 240 F.3d at 125.  Courts have recognized that "a party that knowingly gambles on an unreasonable legal theory in order to achieve a secondary gain – [such as] the leveraging of a settlement – is indeed improperly motivated."  *Torah Soft*, 2001 WL 1506013, at *5.

---

[2] As this Court noted in denying the motion to amend, the material it sought to add was nothing more than evidence for allegations already contained in Plaintiff's original Complaint.  *See, e.g.*, Compl. ¶¶ 15-21 (allegations of access); ¶¶ 31-32 (describing circumstances of beaning as "aberrant" and "never-seen-before").

In any event, Plaintiff's proposed amendments had nothing to do with the substantial similarity issue pending before the Court.  Plaintiff's attempt to prove substantial similarity by adding to the pleadings ignored the Second Circuit's instruction that "[i]n copyright infringement actions, the works themselves supersede and control … any contrary allegations, conclusions or descriptions of the works contained in the pleadings."  *Peter F. Gaito Architecture*, 602 F.3d at 64 (citation omitted).  And, as the Second Circuit later observed, the expert evidence Plaintiff sought to submit was "irrelevant and not permitted" under "well-established" Second Circuit law.  Second Circuit Order at 3; *see, e.g.*, *Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir. 1946).

Although a court may infer an improper motive from circumstantial evidence, here we have Plaintiff's own public statements attesting to the fact he had no idea whether Harbach infringed his copyright when he brought this lawsuit.  In an article published just ten days after he commenced this lawsuit, Plaintiff told an interviewer "that what he wanted most of all was to get to the discovery phase of the lawsuit so that he could finally find out what, if anything, really happened."  McNamara Decl. Ex. A.  Asked if it could be a coincidence, Plaintiff responded that, "If that's what it turns out to be, that's fine.  But I just want to know."  *Id.*

In another interview, he said:

> My objective throughout has simply been to get the cloud removed from my book, for my book not to appear derivative of his…. If he were to have been cooperative a few years ago and produced drafts that were verifiable that showed that this is just one big coincidence […] then I would be able to tell people, agents, publishers, "Look at this crazy coincidence."  That's an OK solution for me.  Another OK solution is, he doesn't, and something nefarious took place.

*Id.* Ex. B.

Filing a lawsuit is not an appropriate strategy for someone who "just want[s] to know" whether his copyright has been infringed.  *See, e.g.*, *Gaste v. Kaiserman*, 863 F.2d 1061, 1067 (2d Cir. 1988) (copyright claim must be based on more than plaintiff's "mere conjecture or surmise" that defendant had access to his work).  Plaintiff's own words demonstrate that he did not put Harbach to the expense of defending this claim out of a good-faith belief that he had a colorable claim.

Plaintiff's admitted uncertainty makes his decision to use this Court as a platform for unwarranted personal attacks on Harbach even more inappropriate.  Just days before telling an interviewer that any similarity between the works could easily have been a coincidence, Plaintiff stated in his Complaint that "a desperate and economically strapped Harbach misappropriated the content that was created by Green and included in *Bucky's* and used it (without Green's consent)

14

to transform the earlier, unsuccessful drafts of his 'baseball novel,' *TAOF*, into a highly acclaimed work." Compl. ¶ 2. In his opposition to Harbach's motion to dismiss, Plaintiff went on to disparage Harbach as someone who "has published one novel in his entire career (currently out of print), and nothing else of note." Dkt. 17 at 36. Not only was this inaccurate,[3] but such a personal attack on an author's literary qualifications "is entirely irrelevant to the question of the similarity of the works at issue." *Starobin v. King*, 137 F. Supp. 2d 93, 98 (N.D.N.Y. 2001) (calling personal attack on defendant author "reprehensible" and "wholly improper").

### C.   Awarding Harbach his fees would support the considerations of compensation and deterrence

The *Kirtsaeng* Court counseled that "fee awards under § 505 should encourage the types of lawsuits that promote" the purposes of the Copyright Act, which include "enriching the general public through access to creative works." 136 S. Ct. at 1986 (citing *Fogerty*, 510 U.S. at 527). Harbach's defense of his right to write novels which capture the imagination of the public certainly advances the goals of the Copyright Act and warrants full compensation. As the Supreme Court explained in *Fogerty*:

> The limited scope of the copyright holder's statutory monopoly … reflects a balance of competing claims upon the public interest: Creative work is to be encouraged and rewarded, but private motivation must ultimately serve the cause of promoting broad public availability of literature, music, and the other arts. The immediate effect of our copyright law is to secure a fair return for an "author's" creative labor. But the ultimate aim is … to stimulate artistic creativity for the general public good.

510 U.S. at 526-27 (quoting *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975)). Because copyright law "ultimately serves the purpose of enriching the general public through access to creative works," the Supreme Court held in *Fogerty* that "it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible. To that end, ***defendants***

---

[3] *The Art of Fielding* remains in print, and Harbach regularly writes for *n+1*, a prominent literary journal he founded and also edits.

*who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them.*"  510 U.S. at 527 (emphasis added).

There can be no question that authors like Harbach "promot[e] broad public availability of literature … and the other arts … [and] stimulate[s] artistic creativity for the general public good."  *Fogerty*, 510 U.S. at 526-27.  They must be able to rely on the protections of the Copyright Act if they are to continue to produce creative works for the public good.  *Id.* at 527 (attorneys' fees award appropriate when successful defense of copyright infringement suit "increased public exposure to a musical work that could, as a result, lead to further creative pieces").

This is just the type of case where an award of attorney fees is warranted so as to deter litigants, like Plaintiff, from pursuing objectively unreasonable litigation.  "When a plaintiff cannot demonstrate a single similarity among the protectible elements of his work and the defendants' work, it is appropriate to award attorneys' fees so as to compensate the defendants for their costs in litigating this matter, and to deter future potential plaintiffs from filing objectively unreasonable claims."  *Porto*, 659 F. Supp. 2d at 618.  Conversely, "[f]ailing to award attorneys' fees to defendants in such situations would invite others to bring similarly unreasonable actions without fear of any consequences."  *Earth Flag*, 154 F. Supp. 2d at 668; *see also Mahan v. Roc Nation, LLC*, 634 F. App'x 329, 331 (2d Cir. 2016) ("awarding fees would deter similar frivolous suits from being filed by others"); *Baker v. Urban Outfitters, Inc*., 431 F. Supp. 2d 351, 359 (S.D.N.Y. 2006) ("[A]n award of costs and fees is crucial ... so as to deter this plaintiff, and other similarly situated plaintiffs, from bringing unreasonable claims based on a cost/benefit analysis that tells such plaintiffs that they can score big if they win and that there will be no adverse consequences if they lose."), *aff'd*, 249 F. App'x 845 (2d Cir. 2007).  This factor also supports a fee award to Harbach.

In sum, this is exactly the kind of case that warrants an award of fees to the prevailing defendants.  In this case, it is "important that the boundaries of copyright law be demarcated as clearly as possible" in order to further the goals of the Copyright Act and deter others from trying to use similarly weak allegations of infringement to ride on the coattails of bestselling authors.  *Fogerty*, 510 U.S. at 527.

## II.    HARBACH'S ATTORNEYS' FEES ARE REASONABLE

As the McNamara Declaration and supporting exhibits demonstrate, Harbach has incurred $203,336.25 in attorneys' fees and costs through the end of February 2019 in defending this litigation.  Harbach respectfully requests that this Court award all requested fees and costs.

In calculating the amount of attorneys' fees to award, the Second Circuit has adopted the "presumptively reasonable fee" standard, which requires the court to calculate "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Harrell*, 2009 WL 3756327, at *1 (citation omitted).  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 493 F.3d 110, 112, 118 (2d Cir. 2007), *amended on other grounds*, 522 F.3d 182 (2d Cir. 2008) (noting that methodology of calculating the "presumptively reasonable fee" standard and the older "lodestar" standard are substantially the same).  In setting a reasonable attorneys' fee, courts should consider the amount of legal work performed by the prevailing party's attorneys, the skill of the attorneys, and the results achieved.  *Earth Flag*, 154 F. Supp. 2d at 669.

The McNamara Declaration and Exhibit F detail the time spent by Harbach's counsel in this case.  These statements include a daily time record showing time billed by each attorney who worked on this matter.  *Id.*  All of Harbach's attorneys' fees have been paid or represent outstanding obligations.  Given the overriding importance of the outcome of this litigation to

Harbach's reputation and livelihood, the rates charged and time spent, as reflected in these records, were reasonable and necessary to defend this action.

### A. The rates charged are reasonable given the experience and qualifications of counsel

Lead counsel for Harbach was Elizabeth McNamara. From 2017 through 2019, when work on this matter took place, her billing rate ranged between $730 and $830 per hour. McNamara Decl. ¶ 16.[4]  Working with her on the action was Adam Lazier, a senior associate whose rate ranged between $465 and $595 per hour. *Id.* ¶ 17. For this matter, Ms. McNamara and Mr. Lazier reduced their regular billing rates by 10%. Ms. McNamara's discounted rate therefore ranged from $657 to $747 per hour, and Mr. Lazier's discounted rate ranged from $418.50 to $535.50.

Paralegals Megan Duffy, Trevor Franklin, Jerome McCain are based in New York, while paralegal Marni Shapiro is based in Washington, D.C. Between them, they have more than 40 years of experience in litigation. Over the course of this litigation, Ms. Shapiro billed at $340-$360 per hour ($306-$324 discounted), Ms. Duffy billed at $295 per hour ($265.50 discounted), Mr. Franklin billed at $290-$305 per hour ($261-$274.50 discounted), and Mr. McCain at $160-$170 per hour ($144-$153 discounted). *Id.* ¶ 18. These rates are fully justified by the qualifications of the attorneys and paralegals in this action, and are consistent with rates charged by attorneys with similar qualifications at other firms.

Ms. McNamara has been a partner in Davis Wright Tremaine's New York office since 1998, and has more than 35 years of litigation experience. McNamara Decl. ¶ 12. She is a sophisticated IP litigator who has successfully defended numerous copyright actions. *See*, *e.g.*, *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000 (N.D. Cal. 2018); *Nobile v. Watts*, 289 F. Supp. 3d

---

[4] As is customary in the industry, Harbach's counsel's hourly rates increased on January 1 of each year.

527 (S.D.N.Y. 2017), *aff'd*, 747 F. App'x 879 (2d Cir. 2018); *Brown v. Time Warner, Inc.*, 287 F. Supp. 3d 380 (S.D.N.Y. 2017); *Acker v. King*, 46 F. Supp. 3d 168 (D. Conn. 2014); *Marquardt v. King*, No. 1:10-CV-3946-JEC, 2011 WL 5042054 (N.D. Ga. Aug. 10, 2011); *Dunn v. Brown*, No. 10 Civ. 11383 FDS, 2011 WL 4527449 (D. Mass. Sept. 26, 2011); *Scott v. Meyer*, No. CV 09-6076 ODW, 2010 WL 2569286 (C.D. Cal. June 21, 2010); *Brown v. Perdue*, No. 04 Civ. 7417(GBD), 2005 WL 1863673, at *9, 13 (S.D.N.Y. Aug. 4, 2005), *aff'd*, 177 F. App'x 121 (2d Cir. 2006).  McNamara Decl. ¶ 16.  Mr. Lazier is a 2009 graduate of the University of Toronto Faculty of Law and a 2015 graduate of the New York University School of Law's LL.M. program, with more than eight years of experience in intellectual property and media law litigation.  Copies of Ms. McNamara's and Mr. Lazier's bios are annexed to the McNamara Declaration as Exhibits G and H, respectively.

According to 2018 annual survey data compiled independently by one of the Big Four accounting firms, Davis Wright Tremaine's billing rates for partners are generally well below the median rates in the New York City area for partners of similar experience in comparably-sized firms.  *See* McNamara Decl. ¶ 19.  For example, the median billing rate for partners in large-sized firms ranged between $890 per hour and $1,231 per hour, with an average of $1,062 per hour.  *Id*.  Ms. McNamara's discounted rate of $657 to $747 per hour compares very favorably to rates charged by her peers in New York.  Similarly, comparable rates for senior-level associates in large-size firms from the class of 2009 (like Mr. Lazier) ranged from $603 to $868 per hour, with a median rate of $743 (compared to Mr. Lazier's discounted rate here of $418.50-$535.50 per hour), and paralegals averaged $282 to $342 per hour (compared to the $144-324 per hour rate here).  *Id.*; *see also Yurman Designs, Inc. v. PAJ, Inc.*, 125 F. Supp. 2d 54, 57-58 (S.D.N.Y. 2000) (finding, in copyright action 19 years ago, that billing rates of $520.69 an hour for partners and $278.50 an hour for associates were reasonable and "commensurate with the rates prevailing

in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation"), *aff'd*, 29 F. App'x 46 (2d Cir. 2002).

### B.   The number of hours worked was reasonable

Harbach's law firm staffed this matter efficiently, with one partner and one associate. Moreover, given the significant experience in litigating similar claims, counsel for Harbach were already very familiar with the controlling law and were able to use that experience to efficiently defend this action.  Together, Ms. McNamara and Mr. Lazier have billed a total of 376.6 hours on this matter – 110.3 hours by Ms. McNamara and 266.3 hours by Mr. Lazier.  McNamara Decl. ¶ 20.  These hours were reasonably necessary to analyze Plaintiff's voluminous allegations of similarity and review the works at issue; to draft Harbach's motion to dismiss, supporting declarations, and reply brief; to prepare for and attend the Court's February 9 status conference; to review Plaintiff's motion to amend the Complaint, and prepare a response opposing that motion before the Court dismissed it *sua sponte*; to prepare the initial fees motion; to prepare a response to Plaintiff's motion seeking to defer consideration of that motion; to brief and argue the appeal before the Second Circuit; and to handle day-to-day management of the case.  *Id*. ¶¶ 21-22.

The total legal fees and costs incurred by Harbach through the end of February 2019 amount to $203,336.25.  *Id.* ¶ 23, Ex. F.[5]  That amount, which includes work on the appeal, is easily within the range of the fee awards to prevailing defendants in other copyright actions in this Circuit and elsewhere, especially considering the length of Plaintiff's Complaint, motion papers, and appellate briefs.  *See*, *e.g.*, *Nobile*, 747 F. App'x 879 (affirming award of $107,346 (not including fees on appeal) following successful motion to dismiss for lack of substantial

---

[5] This figure excludes the fee paid to Harbach's appellate printer, which has already been taxed by the Second Circuit in accordance with its rules.  *See* Dkt. 54.

similarity); *Earth Flag*, 154 F. Supp. 2d at 666 (awarding $106,126 based on objective unreasonableness of plaintiff's claims); *Adsani*, 1996 WL 531858, at *14-15 (same, awarding $107,993); *see also Muller*, 2011 WL 3678712, at *4 (reducing "presumptively reasonable fee" of $150,000 to $40,000 because of financial condition of plaintiff); *Scott*, 2010 WL 2569286 (awarding defendants more than $80,000 in fees and costs after copyright action was dismissed on an upfront motion to dismiss); *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 594 F. Supp. 2d 931, 933-34 (N.D. Ill. 2009) (granting prevailing defendants $592,729 in fees and $66,340 in costs).

## CONCLUSION

For the reasons stated herein, Harbach respectfully submits that the Court should grant Harbach's renewed motion for an award of attorneys' fees and such other and further relief as this Court deems just and proper.

Dated: New York, New York
       March 20, 2019

                      Respectfully submitted,

                      DAVIS WRIGHT TREMAINE LLP

                      By: */s/ Elizabeth A. McNamara*
                            Elizabeth A. McNamara
                            Adam Lazier
                      1251 Avenue of the Americas, 21st Floor
                      New York, New York 10020
                      Tel.: (212) 489-8230
                      Fax:  (212) 489-8340
                      Email:    lizmcnamara@dwt.com
                                      adamlazier@dwt.com

                      *Attorneys for Defendant*
                      *Chad D. Harbach*